### State of Vermont v. Michael Madonna

[726 A.2d 498]

No. 98-352

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 19, 1999

*Robert Butterfield*, Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellant.

*Richard A. Axelrod* of *Axelrod & Adler*, St. Johnsbury, for Defendant-Appellee.

**Johnson, J.** The State appeals the district court's judgment for defendant in a civil license suspension hearing. The issue on appeal is whether the consent form read to defendant informing him of his right to counsel prior to deciding whether to take a breath test adequately advised defendant of his right to speak to a public defender regardless of his income level. We affirm.

During DUI processing, the officer read to defendant from a standard processing form designed to advise motorists of their right under 23 V.S.A. § 1202(c) to consult with an attorney prior to deciding whether to submit to a breath test. The form reads in relevant part:

> You have the right to talk with a lawyer before deciding whether or not to submit to a test. If you cannot afford a lawyer and want one, a Public Defender will be contacted for you, at the State's expense.

At the civil hearing concerning whether defendant's right to drive in Vermont should be suspended pursuant to 23 V.S.A. § 1205(a) (providing for civil suspension of nonresident operating privilege when blood alcohol content is .08 or greater), defendant alleged, and the trial court agreed, that the consent form misinformed defendant of his right to speak with a public defender regardless of financial need. The trial court relied on our decision in *State v. Garvey*, 157 Vt. 105, 595 A.2d 267 (1991), in finding that the form inadequately advised motorists of their rights. On appeal, the State contends that the trial court misinterpreted the scope of the right articulated in *Garvey* and urges reversal of the trial court's order.

Title 23 § 1202(a)(1) provides that every person who operates a vehicle on Vermont roads is deemed to have given implicit consent to an evidentiary test to determine blood alcohol concentration. If a person either refuses to take the test or evidences a blood alcohol concentration greater than .08, the motorist's license will be suspended. See *id.* § 1205(a). Because the decision whether to take the test involves potentially serious consequences, the Legislature has provided motorists with a statutory right to consult an attorney prior to deciding whether to take the test. See *id.* § 1202(c). Nonetheless, the motorist still must decide whether to take the test within thirty minutes of the initial attempt to contact counsel, even if there has been no consultation. See *id.* This is because the test must be

administered within a short period of time to provide an accurate reading of the motorist's blood alcohol concentration.

The Legislature has created a mechanism for facilitating this consultation in 23 V.S.A. § 1202(g), which states that "[t]he defender general shall provide statewide 24-hour coverage seven days a week to assure that adequate legal services are available to persons entitled to consult an attorney under this section." As we explained in *Garvey,* "[t]he rationale for contacting a public defender regardless of financial need is supported by the fact that many DUI arrests occur after normal working hours when attorneys are not as readily available to consult." *Garvey,* 157 Vt. at 107, 595 A.2d at 268.

The statutory scheme governing the administration of evidentiary tests thus seeks to balance the rights of individual motorists against the State's need to effectively enforce the laws. Because of the unusually short amount of time available in this scenario, the State bears the burden not only of informing a motorist of the right to counsel, but also of actually attempting to contact counsel within the thirty-minute time period. See *id.* at 106, 595 A.2d at 268 (defendant's license may not be suspended where refusal is premised on State's inability to provide defendant with consultation with lawyer before being required to decide whether to take the test); see also *Gilman v. Commissioner of Motor Vehicles,* 155 Vt. 251, 255, 583 A.2d 86, 87 (1990) (Dooley, J., dissenting) ("[I]t would be illogical to require suppression where the officer fails to notify of a right to assigned counsel, but recognize no consequence for a failure to afford counsel.").

In *Garvey,* a motorist who was pulled over for a suspected DUI violation was unable to contact either a public defender or an attorney of choice and refused to take a breath test without speaking to an attorney first. The trial court concluded that the motorist had refused a reasonable request for a breath test in violation of 23 V.S.A. § 1205(a). We reversed, interpreting 23 V.S.A. § 1202(c) to require the State to notify a public defender when any motorist is asked to take a breath test, regardless of the motorist's ability to pay. See *Garvey,* 157 Vt. at 107, 595 A.2d at 268 ("[I]n all DUI cases — financial considerations of the suspect notwithstanding — a public defender shall be notified unless waived by the suspect or unless the suspect contacts an attorney of choice within thirty minutes, before a decision about taking the test is required."). The Legislature subsequently created a system of 24-hour, statewide public defender coverage to respond to this need. See 23 V.S.A. § 1202(g). The Legislature has

also since modified our holding in *Garvey* by indicating that, so long as there is an attempt to contact counsel, a decision must be made at the close of the thirty-minute time period. See 23 V.S.A. § 1202(c).

The question before us in this case is whether our decision in *Garvey* imposes an obligation on police officers to tell motorists not only that they have a right to speak with an attorney prior to making their decision about the breath test, but that they have a right to have a public defender contacted for them regardless of their income level.

In *State v. Duff*, 136 Vt. 537, 540, 394 A.2d 1145, 1146-47 (1978), we held that law enforcement officers in DUI stops must assist in the implementation of the right to contact counsel by advising motorists of this right because this is the only way the right can be adequately safeguarded under the circumstances. We later extended *Duff* to apply to civil proceedings. See *Pfeil v. Rutland District Court*, 147 Vt. 305, 309-10, 515 A.2d 1052, 1055-56 (1986) (lack of meaningful opportunity to consult with counsel prevents finding of voluntary refusal in civil proceedings).

Even in light of an officer's duty to advise a motorist of his or her rights, however, the mere failure to convey all possible information to a motorist in the DUI context does not justify suppression. See *State v. Lynaugh*, 158 Vt. 72, 76, 604 A.2d 785, 787 (1992). Information about a motorist's right to contact counsel, however, is treated with special sensitivity. In *State v. Gracey*, 140 Vt. 199, 201, 436 A.2d 741, 743 (1981), we held that the fact that the form read to the defendant did not state that a needy person could consult with an attorney at public expense meant that the defendant in that case was not adequately advised of her rights. We concluded that the general statement that the defendant had a right to speak with an attorney was insufficient to describe her particular entitlement to counsel, i.e., that of a needy person. See *id.*

Similarly, defendant in this case did not receive information pertinent to his particular entitlement to counsel: the right to contact a public defender regardless of financial position. The form read to defendant implied by omission that this option did not exist. There is no reason to conclude that defendant deduced this right on his own.

As we explained in *Garvey*, the reasoning behind contacting a public defender regardless of a motorist's financial need is that many DUI arrests occur at times when private attorneys are not as readily available. See *Garvey*, 157 Vt. at 107, 595 A.2d at 268. Stated another way, the thrust of our holding in *Garvey* was that unavailability of a private attorney should not determine the outcome of a motorist's

decision whether to take the breath test. If a motorist is not advised of the means of procuring an attorney, as defendant was not here, this goal is undermined.

The form as presently worded sets out a truncated list of options: either contacting a private attorney or, if a motorist is needy, contacting a public defender. A motorist, who has no other realistic opportunity to learn of the right articulated in *Garvey*, could not reasonably be expected to infer that he or she has a right to contact a public defender regardless of financial position. See *Gracey*, 140 Vt. at 201-02, 436 A.2d at 743 (form failed to advise defendant of her rights because there was no reason to believe that defendant inferred her right to a public defender before the breath test from reading the public defender form). Therefore, the trial court correctly concluded that the form failed to adequately advise defendant of his rights.

*Affirmed.*